```
IN THE UNITED STATES DISTRICT COURT FOR THE
              EASTERN DISTRICT OF OKLAHOMA

CRISTINE JENKINS,              )
                               )
          Plaintiff,           )
                               )
v.                             )   Case No. CIV-12-262-FHS-KEW
                               )
CAROLYN W. COLVIN, Acting      )
Commissioner of Social         )
Security Administration,       )
                               )
          Defendant.           )
```

## REPORT AND RECOMMENDATION

Plaintiff Cristine Jenkins (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on November 4, 1974 and was 37 years old at the time of the ALJ's latest decision. Claimant completed her education through the seventh grade and did not obtain her GED. Claimant has worked in the past as a cashier and a waitress. Claimant alleges an inability to work beginning February 3, 2004 due to limitations resulting from back problems and bipolar

3

disorder.

## Procedural History

On February 3, 2004, Claimant protectively filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. The application was denied originally and upon reconsideration. After an administrative hearing, an unfavorable decision was rendered by the ALJ on June 20, 2006. However, the opinion was reversed by this Court and the matter remanded for further consideration on December 13, 2007. After a second administrative hearing on remand, the ALJ issued a second unfavorable opinion on September 26, 2008. The ALJ's decision was reversed by the United States District Court for the Western District of Arkansas on February 17, 2011.

On remand, ALJ Edward Starr conducted a third administrative hearing on October 13, 2011. He issued an unfavorable decision on April 4, 2012. The Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe

impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform light work with limitations.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) engaging in an improper credibility analysis; (2) arriving at an improper RFC; and (3) failing to consider all of Claimant's severe impairments at step two.

**Comment on the Briefing**

Claimant filed a brief in this case which is 39 pages in length. This Court's local rules require that the brief be limited to 25 pages unless prior court approval to submit a longer brief has been obtained. EDOK LCvR 7.1(d). But for the fact that this matter has been pending for some time, Claimant's brief would be stricken and she would be required to submit a brief of an appropriate length. The submission of an overly lengthy brief as Claimant has done in this case serves to dilute the arguments with unnecessary verbiage and repetitive arguments. Counsel for Claimant is admonished to familiarize himself with the local rules of this District and avoid this violation in the future.

**Credibility Analysis**

In his decision, the ALJ determined Claimant suffered from the severe impairments of bipolar disorder, depression, anxiety

disorder, headaches, and a back disorder. (Tr. 886). He also found Claimant retained the RFC to perform light work except that she could frequently climb, balance, crawl, kneel, stoop, and crouch, could perform work where interpersonal contact is incidental to the work performed, could perform work where the complexity of tasks is learned and performed by rote, with few variables and where little judgment is required and where the supervision required is simple, direct, and concrete. (Tr. 889). After consultation with a vocational expert, the ALJ determined Claimant could perform the representative jobs of molding machine tender, riveting machine operator, bindery machine feeder and offbearer, motel maid, power screwdriver operator, bottling line attendant, and conveyor line bakery worker which the ALJ found exist in the national economy. (Tr. 896).

Claimant contends that the ALJ improperly rejected her credibility on the extent of her limitations. As is common, the ALJ employs the boilerplate language indicating he reached an RFC before considering Claimant's testimony as part of the evidence to arrive at an RFC rather than first evaluating the testimony then formulating an RFC. (Tr. 893). While this alone is not sufficient to reverse the decision if the credibility findings are otherwise supported by affirmative links to the medical record, the practice

6

should come to an end and the correct analysis should be employed.

Although in many respects the ALJ appears to be dubious of the credibility of Claimant's testimony, he largely adopts many of the limitations to which she testifies because of the reports of Dr. Robert Spray and Dr. Patricia Walz. (Tr. 892-93). He does, however, rely upon some curious bases in order to discount Claimant's credibility. He states Claimant was able to meet five men and marry them but nevertheless limited Claimant's RFC where interpersonal contact is incidental to the work performed. (Tr. 893). The ALJ also concludes that Claimant's work history damages her credibility, finding that she worked only sporadically before her onset date. It appears from the report of Dr. Walz that Claimant got mad at being told what to do, didn't get along with her co-workers and did not associate with them because she does not like people. (Tr. 1069). These statements are consistent with Dr. Walz's clinical findings. (Tr. 1071-72). It is, therefore, difficult to ascertain how these statements could damage Claimant's credibility.

The ALJ also found Claimant's credibility is "harmed" by inconsistent information Claimant has provided on the issue of disability. (Tr. 894). Specifically, Claimant gave inconsistent information regarding whether she was in special education classes

7

in school, whether her substance abuse interfered with her employment in the past, the extent of Claimant's substance abuse, and the use of illegal substances. (Tr. 894). These justifications are all valid bases for rejecting Claimant's credibility.

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or

8

sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3. It must be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). The ALJ detailed the bases for finding Claimant's testimony to be less than credible and, with perhaps the exception of the work history basis for rejection, made the required affirmative links to the medical record. This Court finds no error in the ALJ's credibility assessment.

## RFC Assessment

Claimant contends the ALJ should have found that her ability to keep her attention and concentrate precludes her to maintain work. On March 23, 2004, Dr. Spray found Claimant heard voices, has flashbacks of molestation, physical abuse, and rape two to three times per week, and has nightmares. She reported suicidal ideation. (Tr. 201). Claimant showed appropriate orientation, memory, awareness of information, mathematical calculations, abstract thinking, awareness of similarities and differences, and judgment. Claimant's IQ was estimated at 79-84. Dr. Spray diagnosed Claimant with PTSD, bipolar disorder with psychotic features, rule out borderline intellectual functioning, rule out

personality disorder, NOS. (Tr. 202). Dr. Spray stated Claimant's condition was not expected to improve but could relapse or decompensate if she did not get on her medication. (Tr. 203). Dr. Spray noted no marked limitations in concentration, persistence, or pace. (Tr. 204).

Dr. Spray also completed a Mental Medical Source Statement. He found "poor" functioning for Claimant in the areas of working with or near others without being distracted by them, completing a normal workday or workweek, and ability to get along with co-workers and peers. (Tr. 206-07). He opined that Claimant's conditions may interrupt concentration for prolonged periods of time. Dr. Spray noted social anxiety and social avoidance. (Tr. 207).

The latest report by Dr. Walz was authored on January 11, 2012. Claimant reported that she had attempted suicide on three occasions. She stated she had a hard time remembering things. She experiences chronic pain. She does not sleep well. (Tr. 1068-69). Dr. Walz diagnosed Claimant with bipolar II disorder, history of poly substance dependence reportedly in remission, personality disorder with borderline and antisocial traits with a GAF of 50 to 55. (Tr. 1071). Dr. Walz found Claimant's social skills were impaired by her mood instability, speech was clear and

10

intelligible, intellectual functioning was in the low average range, attention and concentration were slightly impaired, she persisted well, and her speed of information processing was average. (Tr. 1072).

In his RFC assessment, the ALJ accommodated Claimant's mental limitations. RFC is an assessment of the most a claimant can do on a regular and continuing basis despite his limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a). It is an administrative assessment, based on all of the evidence, of how a claimant's impairments and related symptoms affect her ability to perform work-related activities. Id.; *see also*, Soc. Sec. R. 96-5p. The ALJ properly set forth his narrative on how his limitations set out in his RFC accounted for Claimant's impairments.

Other conditions which Claimant identifies as imposing limitations which should have been included in the RFC such as headaches are not of sufficient severity to warrant a further limitation within the RFC. Claimant has simply identified every conceivable medical and mental condition which has been diagnosed and argued that the ALJ was required to include a limitation in the RFC assessment. This approach misses the requirement for severity and a limiting effect upon Claimant's ability to engage in basic work activity.

Claimant also argues the ALJ stated that he did not give substantial weight to four reports which do not contain opinion evidence. This Court is perplexed as to Claimant's allegation of error in this regard. If an opinion was not weighed, it cannot be improperly weighed. Reversal is not warranted for this issue.

The ALJ did give "less weight" to Dr. Spray's opinion because they are "inconsistent with the record as a whole." (Tr. 895). The problem with the ALJ's analysis is he does not explain how these opinions are inconsistent with the medical record. Other courts have experienced similar problems in evaluating opinions in light of these rote statements.

> The court finds that such a summary conclusion that the assessments were or were not consistent with the overall record is beyond meaningful judicial review. In the absence of ALJ findings supported by specific weighing of the evidence, the court cannot assess whether relevant evidence supports the ALJ's conclusion that an assessment was or was not consistent with the overall record. *See Clifton v. Chater,* 79 F.3d 1007, 1009 (10th Cir. 1996). Boilerplate, conclusory statements must be linked to evidence in the record. *See Hardman v. Barnhart,* 362 F.3d 676, 679 (10th Cir. 2004). Conclusory statements do not provide justification for rejecting a medical source opinion; the Commissioner must give specific, legitimate reasons for rejecting the medical source opinion. *Reyes v. Bowen,* 845 F.2d 242, 245 (10th Cir. 1988). Other than making conclusory statements, the ALJ provided no explanation for why two medical assessments were found to be consistent with the evidence, while the other medical assessment was not consistent with the evidence. Nothing in the ALJ's decision explains the basis for these conclusory statements by the ALJ, except for the ALJ's statement that the medical source opinions by Dr. Winkler and Dr. Rubini were similar (R. at 852). However, as set forth previously, there were some differences in the two

opinions, and the ALJ failed to explain why some of the
limitations in Dr. Rubini's opinion were not included in
the ALJ's RFC findings. Therefore, this case shall be
remanded in order for the ALJ to explain why the evidence
is consistent with certain medical opinions, but not others.

Cann v. Colvin, 2013 WL 4549259, 8-9 (D.Kan.).

On remand, the ALJ shall explain his rejection of Dr. Spray's opinion. Indeed, it appears to be perfectly consistent with Dr. Walz's opinions which the ALJ accepted and afforded "significant weight." (Tr. 895).

Similarly, the ALJ rejected Dr. Honghiran's opinion on Claimant's back condition because it included a statement regarding Claimant's ability to obtain a suitable job. (Tr. 895). Dr. Honghiran's opinion as to employment prospects is not a basis for rejecting the totality of his medical findings. On remand, the ALJ shall clarify if the entire opinion or just the vocational opinion is rejected.

Claimant next contends the ALJ erred in not finding her personality disorder as a severe impairment. The ALJ shall review the evidence regarding this disorder and determine whether additional consultative evidence is required to rule out this condition.

**Conclusion**

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above

and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 13th day of September, 2013.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE